UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

YUBIZAY DEL CARMEN          )
TORREALBA LINAREZ,          )
                           )
        Petitioner,         )
                           )
    v.                      )        No. 1:26-cv-00101-JAW
                           )
DERRICK STAMPER, *in his*   )
*official capacity as Chief Patrol*  )
*Agent of Houlton Sector, U.S. Border*  )
*Patrol*, et al.,           )
                           )
        Respondents.        )

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Finding the government's detention of a noncitizen without a hearing violates

due process, the court grants the noncitizen's petition for writ of habeas corpus and

orders the government to provide the noncitizen a bond hearing before an

Immigration Judge within fourteen days of this order.

## I.    BACKGROUND[1]

Yubizay del Carmen Torrealba Linarez, a resident of Maine, is a Venezuelan

citizen who fled to the United States in December 2024 after experiencing violence

and political persecution in her home country. *Pet. for Writ of Habeas Corpus*

*Pursuant to 28 U.S.C. § 2241* ¶¶ 1, 17-22 (ECF No. 1) (*Pet.*).  On December 20, 2024,

Ms. Linarez attended a U.S. Customs and Border Protection (CBP) One appointment,

---

[1]    For the purposes of Ms. Linarez's petition for writ of habeas corpus, the Court reviews the relevant facts as pleaded in her verified petition, verified status report, and accompanying attachments to each.

where CBP granted Ms. Linarez parole pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.* ¶¶ 23-24; Attach. 2, *Asylum Declaration*; Attach. 3, *1-94 Admission Record*. Thereafter, Ms. Linarez moved to Maine, where she has resided ever since. *Id.* ¶ 26. Ms. Linarez applied for asylum within one year of her arrival to the United States. *Id.* ¶ 28; Attach. 4, *Asylum Application Fee Receipt*. Although Ms. Linarez maintains her parole set no conditions requiring assurances she would appear at her hearings, she reports that at some point the U.S. Department of Homeland Security initiated removal proceedings against her by issuing a notice to appear. *Id.* ¶¶ 25, 27.

On February 25, 2026, CBP agents arrested Ms. Linarez on her way to work. *Id.* ¶ 34. She remains detained in CBP custody in Fort Fairfield, Maine. *Id.* ¶ 36; *Min. Entry* (ECF No. 6). On February 26, 2026, alleging her immigration detention violates federal law and the United States Constitution, Ms. Linarez filed a verified petition for writ of habeas corpus, seeking her immediate release from immigration detention or, alternatively, a bond hearing in Immigration Court. *Pet.* ¶¶ 43-78. That same day, the Court issued a seventy-two-hour emergency order, enjoining Respondents from transferring Ms. Linarez outside the District of Maine. *Emer. Order Concerning Stay or Transfer of Removal* (ECF No. 3) (*Emer. Order*).

At the teleconference of counsel on February 27, 2026, Respondents confirmed Ms. Linarez was in their custody in Fort Fairfield, Maine at the time Ms. Linarez filed her petition, clarifying there were no issues of personal jurisdiction or venue for the Court to consider. *Min. Entry*. The parties also agreed to extend the Court's emergency order blocking Ms. Linarez's transfer outside the District of Maine until

the Court's resolution of its forthcoming order to show cause. *Id.* Immediately following the teleconference, the Court ordered Respondents to show cause why Ms. Linarez's petition should not be granted, *O.S.C.* (ECF No. 7), and, consistent with the parties' agreement, extended the emergency no-transfer order until the Court issues its ruling on the order to show cause. *Order* (ECF No. 8) (*Order*).

On February 28, 2026, Ms. Linarez filed a status report, informing the Court of her deteriorating health and requesting a status conference. *Pet'r's Status Report Regarding Her Health and Req. for Status Conf.* (ECF No. 9) (*Status Report*). The Court held a teleconference with counsel on March 2, 2026, at which the parties agreed to expedite their briefing so the Court could quickly rule on the pending show cause order before determining the proper course of action regarding Ms. Linarez's health concerns. *Min. Entry* (ECF No. 12). That same day, March 2, 2026, Respondents filed their response to the order to show cause, opposing Ms. Linarez's petition, *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 11) (*Resp'ts' Opp'n*), and Ms. Linarez filed her reply. *Pet'r's Reply in Supp. of Pet. for Writ of Habeas Corpus* (ECF No. 13) (*Pet'r's Reply*).

In Ms. Linarez's February 28, 2026 status update, she informed the Court of her deteriorating health, primarily from a large ovarian cyst that causes her vaginal bleeding resulting in anemia that requires daily liquid iron supplements to mitigate her abnormally low iron levels, as well as kidneys stones for which she also took medication, and post-traumatic stress disorder (PTSD) arising from the events that led her to flee her home country and seek asylum in the United States. *Status Report*

¶¶ 1-6.  Ms. Linarez reports worsening symptoms and declining health because she does not have access to her medication and supplements while she is detained in CBP custody.  *Id.* ¶¶ 7-8.  A letter from her doctor warns of "permanent organ dysfunction and damage," including "kidney damage" and "heart failure" from her continued detention without access to her medication and supplements.  *Status Report*, Attach. 1, *Dr. Blanas Letter*.

## II.    THE PARTIES' POSITIONS

Ms. Linarez alleges her detention violates the Immigration Nationality Act (INA) and her due process rights under the Fifth Amendment of the United States Constitution.  *Pet.* ¶¶ 43-78.  Ms. Linarez maintains she is illegally categorized as a mandatory detainee pursuant to 8 U.S.C. § 1225(b), rather than a discretionary detainee under § 1226(a) who is entitled to a bond hearing before an Immigration Judge.  *Id.* ¶¶ 70-78.  Ms. Linarez argues that her detention without a bond hearing violates her Fifth Amendment due process rights.  *Id.* ¶¶ 43-69.  She seeks, among other remedies, a writ of habeas corpus ordering her immediate release, or in the alternative, an order requiring an Immigration Judge to provide her a bond hearing as soon as possible.  *Id.* 15-16.

In their opposition, Respondents maintain Ms. Linarez is properly categorized as a mandatory detainee under § 1225(b)(2), as dictated by controlling agency precedent.  *Resp'ts' Opp'n* at 1-2.  However, Respondents acknowledge that "the caselaw from this Court [has] uniformly sustain[ed] challenges to DHS's

interpretation of § 1225" and they concede Ms. Linarez's petition is not substantially distinguishable from that line of caselaw. *Id.*

In her reply, Ms. Linarez argues that Respondents have failed to show cause why her petition should not be granted. *Pet'r's Reply* at 2-3. Consistent with the body of caselaw within this District, combined with Respondents' concession that this Ms. Linarez's petition is not substantially distinguishable from that line of cases and the health risks that continued detention poses to Ms. Linarez and the wellbeing of her young daughter, Ms. Linarez argues she is entitled to immediate and unconditional release pending her bond hearing before an Immigration Judge. *Id.* at 3-5; *Dr. Blanas Letter*. Should the Court not order her immediate release, she maintains, in the alternative, she is still entitled to a bond hearing before an Immigration Judge. *Pet'r's Reply* at 5.

## III. DISCUSSION

### A. Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Ms. Linarez's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, under habeas law, jurisdiction in a particular district is established when a petitioner is physically

present in the district at the same moment a petition is filed there on her behalf. *Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948). Here, the Court retains jurisdiction over this matter, because Ms. Linarez filed her habeas petition when she was in custody in the District of Maine.

### B.    The Merits

Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Ms. Linarez, and she is therefore subject to discretionary detention under § 1226(a) and entitled to a bond hearing before an Immigration Judge.

#### 1.    Statutory Framework

##### a.    Mandatory Detention under Section 1225(b)(2)

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion). Relevant here is § 1225(b)(2).[2] Under § 1225(b)(2) "in the case of an alien who is an applicant for

---

[2]    Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expedited removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," she is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV). Ms. Linarez is an asylum applicant, and Respondents assert only that Ms. Linarez is subject to mandatory detention under § 1225(b)(2), not § 1225(b)(1).

admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  Thus, § 1225(b)(2) creates a mandatory detention scheme.  *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").  As other courts have recognized, this language requires that "several conditions must be met" to impose mandatory detention under § 1225(b)(2).  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025).  Specifically, the noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Id.*; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025).

### b.    Discretionary Detention under Section 1226(a)

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge.  *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).  Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole."  8 U.S.C. § 1226(a)(1)-(2).  Section 1226(a) thus "establishes a discretionary detention framework for noncitizens."  *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 Dist. LEXIS 128085, at *4-5 (D. Mass. Jul. 7, 2025).  However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved

in certain enumerated criminal activities.  8 U.S.C. § 1226(c)(1).  None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8) (2025).  If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge.  8 C.F.R. § 236.1(d)(1) (2025).  At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk."  *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).  An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA.  8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.* at 288 (explaining that, "once inside the United States" a noncitizen "*present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### c.    Parole Pursuant to Section 1182(d)(5)(A)

"Parole pursuant to Section 1182(d)(5)(A) serves a unique function." *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 U.S. Dist. LEXIS 233224, at *34 (E.D.N.Y. Nov. 28, 2025). Although § 1182(d)(5)(A) does not grant admission to the United States, it allows the Secretary of Homeland Security to permit certain noncitizens "on a case-by-case basis" to enter or remain in this country only for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 288. For example, § 1182(d)(5)(A) is simultaneously the only method of parole for those subject to mandatory detention under § 1225(b), but it also covers asylum applicants who obtain advance parole to travel into and out of the United States. *Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 211907, at *16 (D. Me. Oct. 28, 2025) (citing 8 C.F.R. § 212.5(f)).

However, parole is "not [to] be regarded as an admission of the alien[,] and when the purposes of such parole . . . have been served," § 1182(d)(5)(A) mandates that "the alien shall forthwith return or be returned to the custody from which he was paroled." *Id.* Thereafter the parolee's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* In other words, parole under § 1182(d)(5)(A) "employs a legal fiction whereby non-citizens are physically permitted to enter the country but are nonetheless 'treated,' for legal purposes, 'as if stopped at the border.'" *Martinez v. Hyde*, No. 25-11613-BEM, 2025 U.S. Dist. LEXIS 141724, at *9 (D. Mass. July 24, 2025) (quoting *Thuraissigiam*, 591 U.S. at 139).

## 2.    Applicable Statutory Basis for Detention

The parties agree Ms. Linarez was paroled into the United States pursuant to § 1182(d)(5)(A), and neither party disputes that Ms. Linarez is "an applicant for admission" or that she is "not clearly and beyond a doubt entitled to be admitted." Instead, the question here, as with so many immigration habeas cases to reach the district courts in recent months, is whether Ms. Linarez is "seeking admission" such that she is subject to mandatory detention under Section 1225(b)(2)(A).

As Respondents concede, recent decisions from district courts within the First Circuit and elsewhere have consistently rejected Respondents' interpretation of § 1225(b)(2)'s mandatory detention scheme under similar factual circumstances. *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases); *Lopez v. Trump*, No. 2:25-cv-863, 2025 U.S. Dist. LEXIS 233128, at *6 (D. Vt. Nov. 17, 2025) (rejecting DHS's application of § 1225(b) mandatory detention to re-detain noncitizen originally released under § 1226(a)); *Caiza*, 2025 U.S. Dist. LEXIS 195270, at *7-8 (collecting cases).[3]

---

[3]    Most often, though not applicable here, this Court and other district courts have held that a noncitizen continuously residing in the United States for more than two years cannot be considered actively seeking admission and are therefore not subject to mandatory detention under § 1225(b)(2) *See, e.g.*, *Chogllo Chafla v. Scott*, No. 2:25-cv-00437-SDN, 2025 U.S. Dist. LEXIS 184909, at *35 (D. Me. Sept. 21, 2025).  Rather, a noncitizen "already in the country pending the outcome of removal proceedings" is subject to discretionary detention under § 1226(a), *Jennings*, 583 U.S. at 289, and is therefore entitled to a bond hearing before an Immigration Judge.  *See Hernandez-Lara*, 10 F.4th at 41.  This limitation comes from language in 8 U.S.C. § 1225(b)(1), which courts across the country have consistently read to extend to § 1225(b)(2), too.  *See Moraes v. Joyce*, No. 2:25-cv-00583-JAW, U.S. Dist.

The phrase "'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action." *Hyde*, 792 F. Supp. 3d at 218. As other courts to reach this issue have explained, 'seeking admission' "contemplates that those arriving, i.e. those who appear at the border or a port of entry, [who] must be inspected." *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 U.S. Dist. LEXIS 261199, at *18 (S.D.N.Y. Dec. 17, 2025); *see also Wazilada v. Trump*, No. 2:25-cv-00768, 2025 2025 U.S. Dist. LEXIS 256630, at *11 (D. Vt. Dec. 11, 2025) (same); *Rodriguez-Acurio*, 2025 U.S. Dist. LEXIS 233224, at *64-71 (same); *Coalition for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 81-94 (D.D.C. 2025) (same).

In the context of § 1182 parole, the D.C. District Court has explained that when the statute is "[r]ead according to its plain meaning, a noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here," but "[i]t would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States." *Coalition for Humane Immigrant Rts.*, 805 F. Supp. 3d at 90-91; *see also* 8 U.S.C. § 1225(b)(2) (providing for "*inspection* of other aliens") (emphasis supplied).

Although the expiration of § 1182 parole returns the parolee "to the custody from which he was paroled," 8 U.S.C. § 1182(d)(5)(A), district courts across the country have consistently held that the expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place. *See*

LEXIS 234386, at *9-10 (D. Me. Dec. 2, 2025). Ms. Linarez entered the United States in December 2024 on parole, she therefore has not resided continuously inside the country for more than two years.

*Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 U.S. Dist. LEXIS 1726, at *8-9 (W.D. Mich. Jan. 6, 2026); *see also Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *30-35 (rejecting the argument that § 1182(d)(5)(A)'s prescription that a noncitizen be returned to the "custody" from which they were paroled requires a return to the detention authority to which they would have been subject prior to any grant of parole); *Rodriguez v. Rokosky*, No. 25-17419 (CPO), 2025 U.S. Dist. LEXIS 250239, at *4-6 (D.N.J. Dec. 3, 2025) (same); *see also Walizada v. Trump*, No. 2:25-cv-00768, 2025 U.S. Dist. LEXIS 256630, at *38-39 (D. Vt. Dec. 11, 2025) (calling absurd the idea that the expiry of petitioner's parole now placed him in the "perpetual status" of an "arriving alien"); *Caiza*, 2025 U.S. Dist. LEXIS 211907, at *16 ("However, it does not necessarily follow that all those paroled under § 1182(d)(5)(A) were detained under § 1225 in the first instance"); *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 U.S. Dist. LEXIS 173976, at *10 (N.D. Cal. Sep. 5, 2025) ("termination of parole does not generally require treating noncitizens as if they had never been paroled in the first place").

Instead, "[s]ection 1182(d)(5)(a) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal" and mandatory detention under § 1225(b). *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *34 (internal quotations and citations omitted); *see also Rodriguez-Acurio*, 2025 U.S. Dist. LEXIS 233224, at *52-58 (same); *Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 U.S. Dist. LEXIS 13849, at *20-21 (E.D. Pa. Jan. 26,

2026) (same); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 U.S. Dist. LEXIS 213487, at *14-19 (E.D. Mich. Oct. 29, 2025) (same); *Coalition for Humane Immigrant Rts*, 805 F.Supp.3d at 81-94 (same); *Harmanpreet Singh v. Albarran*, No. 1:25-cv-01821, 2025 U.S. Dist. LEXIS 260000, at *4-7 (E.D. Cal. Dec. 16, 2025) (same); *Walizada*, 2025 U.S. Dist. LEXIS 256630, at *38-39 (same); *Rokosky*, 2025 U.S. Dist. LEXIS 250239, at *4-6 (same); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 U.S. Dist. LEXIS 204373, at *20-21 (N.D. Ohio Oct. 16, 2025) (same); *Aviles-Mena*, 2025 U.S. Dist. LEXIS 173976, at *10 (same).

This logic applies neatly to the facts in Ms. Linarez's case, who, having previously been paroled by CBP, is already present in the United States with a pending asylum application. The expiration of her parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening. *See Walizada v. Trump*, 2025 U.S. Dist. LEXIS 256630, at *26-28; *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *18-19, 30-35 (same). Neither do Respondents argue that Ms. Linarez is required to undergo a new "credible fear" interview upon the termination of her parole. *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *18-19; *see also Caiza*, 2025 U.S. Dist. LEXIS 211907, at *14-19 (looking to the circumstances of the initial grant of parole to determine whether § 1226(a) and 1225(b) applied to an expired § 1182 parolee).

Furthermore, Ms. Linarez pursued a lawful pathway to asylum. She applied for and attended her CBP One application appointment before entering the United States, upon which CBP granted her parole. *Pet.* ¶¶ 23-24; *Asylum Declaration*; *1-94*

*Admission Record.* She has lodged her asylum application before her parole expired. *Pet.* ¶ 28; *Asylum Application Fee Receipt.* She also maintains that her parole set no conditions requiring assurances she would appear at her hearings and Respondents do not dispute or argue any violations of her parole conditions, and, although her parole has expired, Ms. Linarez continues to pursue her asylum application. *Pet.* ¶¶ 25, 28-29. Furthermore, the facts of Ms. Linarez's case are readily distinguishable from *Caiza*, in which this Court held that the "circumstances of [an expired § 1182 parolee's] initial encounters with immigration authorities" indicated he was subject to mandatory detention under § 1225(b)(2), in part because the government paroled him due to detention capacity, rather than to parole him in advance of filing an asylum application. *Caiza*, 2025 U.S. Dist. LEXIS 211907, at *15 ("[P]arole under § 1182 does not by itself demonstrate that he was initially detained under § 1225(b)(2)").

Therefore, any determination as to Ms. Linarez's detention must be conducted under the discretionary detention framework of Section 1226(a), which "governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal," including expired parolees within the United States pending the adjudication of their asylum claim. *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 U.S. Dist. LEXIS 219101, at *7 (S.D.N.Y. Nov. 4, 2025) (quoting Jennings, 583 U.S. at 288).

### 3. Due Process

Because Ms. Linarez is currently in the United States, she is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 U.S. Dist. LEXIS 175513, at *25 (D. Mass. Sep. 9, 2025), which provides that she will not be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Ms. Linarez bears the burden of demonstrating by a preponderance of the evidence that her detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *29 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao*, 2025 U.S. Dist. LEXIS 175513, at *26 (same); *Hernandez-Lara*, 10 F.4th at 27-28 (same). Under *Mathews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable

15

value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.    Private Interest

In her petition, Linarez asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects"). A noncitizen subject detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41. In this case, Respondents have refused Ms. Linarez the bond hearing she is guaranteed under § 1226(a) and have failed to meet their burden for her continued detention as due process requires. Ms. Linarez has therefore clearly established the first *Mathews* factor weighs in her favor.

### b.    Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing that Ms. Linarez presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in her favor.

### c.    Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do not raise any governmental interest favoring Ms. Linarez's continued detention without a bond hearing. *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *34 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Mathews* factor weighs against Respondents and in favor of Ms. Linarez.

The Court concludes that Respondents' detention of Ms. Linarez without a bond hearing pursuant to § 1226(a) therefore violates her due process rights.

### C.    Current Status

Ms. Linarez filed her petition on February 26, 2026, *Pet.*, and immediately following her filing, the Court issued an emergency order, ordering Respondents not to transfer her outside the District of Maine for at least seventy-two hours. *Emer. Order* at 1.  On February 27, 2026, the Court held a telephone conference of counsel in which Respondents confirmed that Ms. Linarez is being held in Fort Fairfield, Maine, and the Court extended the emergency order enjoining Respondents from transferring her outside the District of Maine "until the Court issues its ruling on the order to show cause." *Order.*

There are two interrelated issues.  First, the Court is ordering the Respondents to provide Ms. Linarez with a bond hearing.  If her presence at the bond hearing requires her to travel outside the District of Maine, her travel would technically violate the current geographic restriction in the order of the Court.  Therefore, the Court amends its Order dated February 27, 2026 as follows:

> The Court therefore ENJOINS Respondents from removing Yubizay del Carmen Torrealba Linarez outside the District of Maine pending further order of the Court.  However, if her presence at the ordered bond hearing requires her to be outside the District of Maine, the Court ORDERS that the Respondents may remove her from the District of Maine solely for the purpose of attending the hearing to return her to the District of Maine immediately upon the conclusion of the hearing, if bond is denied.

The second interrelated issue is Ms. Linarez's current medical condition.  *See Status Report* at 1-4.  Dr. Blanas, Ms. Linarez's treating physician, described a potentially very serious prognosis, if Ms. Linarez does not quickly obtain adequate medical treatment.  There are two possibilities.  First, the Respondents could

continue to detain Ms. Linarez pending her bond hearing, but, given the potential seriousness of her medical conditions, the Court would require the Respondents to demonstrate that she will obtain adequate medical care if she is detained. Second, the Court could release Ms. Linarez under appropriate bond conditions pending her bond hearing by an Immigration Judge.

The Court views Ms. Linarez, based on the limited information before it, as a good candidate for release pending the bond hearing. Ms. Linarez not only has the medical conditions that require her to maintain contact with her treating physician, but she also has a four-year-old daughter for whom she is responsible. The Court suggests that counsel confer and determine whether they can agree to a release plan with appropriate conditions to assure her appearance at the to be scheduled bond hearing. The Court will hold a conference of counsel as soon as possible to obtain the positions of the parties.

A third alternative is for the Court to either retain or release Ms. Linarez based on the current record or any additional information the parties wish to present. The Court will discuss the appropriate resolution of these issues at the telephone conference of counsel.

In the interim, the Court ORDERS that the Respondents not remove Yubizay del Carmen Torrealba Linarez outside the District of Maine, except if necessary to attend any scheduled bond hearing, pending further order of the Court.

## IV.    CONCLUSION

Finding Respondents' continued detention of Ms. Linarez without a bond hearing violates federal law and the Fifth Amendment of the United States Constitution, the Court GRANTS Yubizay del Carmen Torrealba Linarez's Petition for Writ of Habeas Corpus (ECF No. 1) and enjoins Respondents from denying Ms. Linarez a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to her and further ORDERS Respondents shall provide Ms. Linarez a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of this order. Lastly, the Court ORDERS Respondents to file a status report within five days of Ms. Linarez's bond hearing, stating whether Ms. Linarez has been granted bond, and, if her request was denied, the reasons for that denial.

Finally, the Court ORDERS the Clerk's Office to schedule a telephone conference with counsel as soon as possible.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of March, 2026

20